IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN M. JEFFS<br><br>v.<br><br>WORLD MONUMENTS FUND, INC.<br><br>and<br><br>JOSHUA DAVID<br><br>and<br><br>LISA ACKERMAN | CIVIL ACTION<br><br>NO. |

**COMPLAINT**

**Parties**

1. Plaintiff, Benjamin M. Jeffs, is a citizen of the United Kingdom and a resident of the Commonwealth of Pennsylvania. He resides at 324 S. 11th Street, Apartment 41, Philadelphia, PA 19107. Jeffs lawfully entered the United States pursuant to a H-1B visa. He remains lawfully in the United States subject to a pending Green Card application.

2. Defendant, World Monuments Fund Inc., ("WMF") is a New York non-profit corporation with its principal place of business located at the Empire State Building, 350 Fifth Avenue, Suite 2412, New York, NY 10118.

3. Defendant Joshua David is the President of WMF, with a place of business at the Empire State Building, 350 Fifth Avenue, Suite 2412, New York, NY 10118. On information and

belief, David is a citizen and resident of a state other than Pennsylvania.

4. Defendant Lisa Ackerman is the Executive Vice President of WMF, with a place of business at the Empire State Building, 350 Fifth Avenue, Suite 2412, New York, NY 10118. On information and belief, Ackerman is a citizen and resident of a state other than Pennsylvania.

## Jurisdiction and Venue

5. Subject matter jurisdiction exists under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between a citizen of a state and a citizen of a foreign state.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Jeffs's claims occurred within the district. Jeffs was induced to move to the United States to work for WMF at a position based out of WMF's New York office. Jeffs's employment contract negotiations with WMF were conducted by its Executive Vice President, Lisa Ackerman, who was (and remains), based in WMF's New York office in this district.

7. After moving to the United States from the United Kingdom to work for WMF, Jeffs moved to and resided in Philadelphia, PA, but performed most of his work for WMF in its New York office in this district.

**Facts**

8. Jeffs was employed by WMF from June 1, 2015, through August 31, 2016.

9. On March 1, 2015, Jeffs received an offer of employment from WMF's Executive Vice President, Lisa Ackerman ("Ms. Ackerman"). The Employment Contract offered Jeffs the position of Director of Programs at the World Monuments Institute. Exhibit 1.

10. The offer letter detailed the terms of the offer, which included a proposed salary, a relocation bonus, leave days, health insurance, and the initial term of the Employment Contract.

11. The offer letter states "the initial term for this position ends June 30, 2017." Exhibit 1.

12. In February 2015, Jeffs discussed the duration of his employment contract with Ackerman. WMF's job required Jeffs to relocate from the United Kingdom to the United States and required that Jeffs obtain an H-1B visa. Due to the complexities of the move and the need to obtain a visa, Jeffs informed Ms. Ackerman that he would accept the offer if the initial term of the employment contract was three years.

13. The offer letter sent to Jeffs on March 1, 2015, incorrectly included a two-year term, rather than the agreed three-year term. Exhibit 1.

14. On March 3, 2015, Jeffs contacted Ackerman and told her that the offer letter incorrectly contained a two-year term, instead of a three-year term.

15. On March 3, 2015, Ms. Ackerman responded to Jeffs's email. She wrote:

> I'll check the date in the letter. I thought it was 2.5 years. If not, when the visa is approved and I send you a definitive employment letter, I can change the date.

Exhibit 2.

16. The offer letter and the March 3, 2015, email formed Jeffs's employment contract ("Contract") with WMF. Whatever Ackerman meant by "a definitive employment letter," there was no other writing addressing the terms of Jeffs's employment or the Contract.

17. Relying upon the offer letter and Ms. Ackerman's confirmation that the term of employment would be two and one-half years, Jeffs agreed to the Contract.

18. On March 12, 2015, WMF applied for a H-1B visa on behalf of Jeffs. In the H-1B visa application, WMF stated the dates of intended employment for Jeffs were April 6, 2015, to April 5, 2018.

19. On April 14, 2015, WMF received notice that its request for a H-1B visa on behalf of Jeffs was approved and his H-1B visa was valid from April 13, 2015, to April 5, 2018.

4

20. In May 2015, Jeffs moved to Philadelphia and began employment at WMF on June 1, 2015.

21. As Director of Programs at the World Monuments Institute, Jeffs was responsible for guiding, overseeing, and initiating WMF's education, advocacy and outreach activities at a global level and developing WMF's interactions with universities, research centers and other advocacy activities.

22. Jeffs performed his duties with great enthusiasm and to a high standard. Jeffs' work contributed to the success of WMF's activities.

23. On June 7, 2016, the president of WMF, David, sent Jeffs a letter stating that WMF was terminating his employment effective July 15, 2016. Exhibit 3.

24. On August 31, 2016, Jeffs' employment at WMF was terminated.

25. WMF breached the Contract when it terminated Jeffs' employment on August 31, 2016.

26. WMF is liable for compensating Jeffs for the remaining period of the Contract from September 1, 2016 to December 1, 2017.

27. Pursuant to the Employment Contract, Jeffs is entitled to the following compensation:

| Wages Owed for Breach of Contract | |
|---|---|
| Base Salary from September 1, 2016 to December 1, 2017 | $156,250 |
| Health insurance care coverage from September 1, 2016 to December 1, 2017-- estimate | $15,000 |
| Other salary related benefits—estimate | $15,000 |
| Subtotal | $186,250 |
| Consequential damages | To be determined |

28.  Jeffs is entitled to $186,250, all of which are wages under the Pennsylvania Wage Payment and Collection Law, 43 Pa. C. S. § 260.1, et seq.

29.  WMF's refusal to pay wages for the period of September 1, 2016 to December 1, 2017, is a breach of the Contract.

30.  WMF's failure to pay Jeffs the amounts owed to him under the Contract is a violation of the Pennsylvania Wage Payment and Collection Law, 43 Pa. C. S. § 260.1, et seq.

31.  In addition to the amounts due Jeffs owed to him under the terms of the Employment Contract, Jeffs is also entitled to liquidated damages in the amount equal to 25% of the total amount due to him ($46,563) and Jeffs' reasonable attorneys' fees and costs to be paid by WMF as a result of violations of the Pennsylvania Wage Payment and Collections Law.

6

| Pennsylvania Wage Payment and Collection Law Statutory Damages | |
|---|---|
| Liquidated Damages Equal to 25% of total amount due.  43 P.S. § 206.10 | $46,563 |
| Attorneys' Fees 43 P.S. § 206.9a | To be determined |
| Costs 43 P.S. § 206.9a | To be determined |

COUNT I
BREACH OF EMPLOYMENT CONTRACT
Jeffs v. WMF

32. Jeffs incorporates the allegations of paragraphs 1 through 32.

33. WMF has breached its obligation to pay Jeffs for the remaining period of the Contract. WMF is liable for $156,250 for failure to pay Jeffs' base salary from September 1, 2016 through December 1, 2017.

34. WMF is liable for $30,000 for failure to pay other salary related benefits.

35. Jeffs is due $186,250, plus prejudgment interest at the legal rate from August 31, 2016, the date his employment was terminated.

36. WMF is also liable for consequential damages as WMF's termination of Jeffs' employment also resulted in the termination of Jeffs' H-1B visa.

7

WHEREFORE, Jeffs demands judgment against WMF in the amount of $186,250, plus prejudgment interest, plus consequential damages, and costs and such other and further relief that the Court deems proper and just.

## COUNT II
## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
## Jeffs v. WMF

37. Jeffs incorporates the allegations of paragraphs 1 through 37.

38. The Pennsylvania Wage Payment and Collection Law applies because Jeffs performed some of his work for WMF in Pennsylvania and Pennsylvania has a public policy interest in applying the statute to its residents.

39. WMF's failure to pay Jeffs $186,250 in wages to which he is entitled is a violation of the Wage Payment and Collection Law, 43 P.S. § 260.1 et seq.

40. The Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.6 provides that an employer must promptly pay guaranteed pay, which are wages under the statute.

41. WMF has refused to pay the $186,250 owed to Jeffs under the express terms of the Employment Contract.

42. In addition to the termination benefits owed to Jeffs, WMF is liable under the Wage Payment and Collection Law, 43 P.S. § 260.10 for statutory liquidated damages of 25% of the

amount owed $46,563 and for attorneys' fees and costs, 43 P.S. § 260.9a.

WHEREFORE, Jeffs demands judgment against WMF, in the amount of $232,813, plus pre-judgment interest, attorneys' fees and costs and such other and further relief that the Court deems proper and just.

### COUNT III
### WAGE PAYMENT AND COLLECTION LAW
### Jeffs v. David and Ackerman

43. Jeffs incorporates the allegations of paragraphs 1 through 43.

44. Joshua David and Ackerman are WMF's President and Executive Vice President. In theses capacities, they are responsible for purposes of the Wage Payment and Collection Law for WMF.

45. Pursuant to the Wage Payment and Collection Law, 43 P.S. § 260.2a, David as President and Ackerman as Executive Vice President are personally jointly and severally liable with WMF to Jeffs for all amounts due Jeffs $186,250, plus 25% liquidated damages of $46,563, and interest, attorneys' fees and costs.

WHEREFORE, Jeffs demands judgment against WMF, in the amount of $232,813, plus interest, attorneys' fees and costs and such other and further relief that the Court deems proper and just.

## COUNT IV
## NEW YORK LABOR LAW
### Jeffs v. WMF

46. Jeffs incorporates the allegations of paragraphs 1 through 46.

47. WMF's failure to pay Jeffs is wages is a violation of the Labor Law, McKinney's Labor Law § 1, et seq., including without limitation Article 6—Payment of Wages.

48. Jeffs is entitled to statutory 100% liquidated damages and attorney's fees.

WHEREFORE, Jeffs demands judgment against WMF in the amount of $186,250, plus 100% liquidated damages of $186,250, plus interest, attorneys' fees and costs and such other and further relief that the Court deems proper and just.

## COUNT IV
## NEW YORK LABOR LAW
### Jeffs v. David and Ackerman

49. Jeffs incorporates the allegations of paragraphs 1 through 49.

50. David and Ackerman are employers under the New York Labor Law.

51. Pursuant to the Labor Law, David and Ackerman as employers are personally jointly and severally liable with WMF to Jeffs for all amounts due Jeffs ($186,250), plus 100% liquidated damages of $186,250, plus interest, attorneys' fees and costs.

WHEREFORE, Jeffs demands judgment against David and Ackerman in the amount of $186,250, plus 100% liquidated damages of $186,250, plus interest, attorneys' fees and costs and such other and further relief that the Court deems proper and just.

## COUNT V
### FRAUD
**Jeffs v. WMF, David and Ackerman**

52. Jeffs incorporates the allegations of paragraphs 1 through 52.

53. As described above, Jeffs and WMF formed an employment contract for a term of two and one-half years. WMF's "defense" to the contract claim, as expressed by WMF, is not an assertion that terminating the two and one-half-year contract 15 months early is permitted by the contract or for some other reason, but that *no contract existed* notwithstanding a written offer of employment for a term, written acceptance of the offer, and written confirmation by Ackerman of the acceptance of employment for a term of two and one-half years.

54. The assertion that the textbook offer, acceptance and confirmation does not form a contract because Ackerman secretly chose not to prepare a "definitive employment letter" following the written confirmation, confirms that the written statements "the initial term for this position ends June 30, 2017," (exhibit 1) and

11

> I'll check the date in the letter. I thought it was 2.5 years. If not, when the visa is approved and I send you a definitive employment letter, I can change the date[.]

(exhibit 2) were misrepresentations, because Ackerman and WMF had no intention of honoring the contract of employment for a two and one-half-year term and had no intention of preparing a "definitive employment letter" containing a two and one-half-year employment term, or at all.

55. When Ackerman offered Jeffs a job first for two years, and then for two and one-half years, it was a lie, as WMF now says that the offer letter and following email exchange did not form a contract because no later "definitive employment letter" was prepared.

56. WMF's and Ackerman's misrepresentations are fraudulent, because if WMF and Ackerman did not intend that a two and one-half-year contract existed, or would exist upon the promised "definitive employment letter," the statements to Jeffs were known to be false when Ackerman made them and because Ackerman and WMF did not have the intention to enter an employment contract for a two and one-half-year term.

57. Having described and promised an employment contract for a two and one-half-year term, Ackerman and WMF intended Jeffs's conduct to be influenced by the misrepresentations, that is, that Jeffs would accept a job under the terms stated.

58. Ackerman and WMF made the misrepresentations for the purpose of reliance by Jeffs.

59. Jeffs relied, and justifiably and reasonably relied, on Ackerman's and WMF's misrepresentations by accepting the job and relocating to the United States for the job.

60. Ackerman's and WMF's misrepresentation caused damage to Jeffs, who was fired after relocating to the United States and has been unable to obtain new employment.

61. Jeffs has been damaged by the loss of what was promised him, the loss of alternatives that he did not obtain or even attempt to obtain, and consequential damages including emotional distress at being unemployed and the loss of his visa rights.

62. Because Ackerman's and WMF's fraud is part of a business transaction, Jeffs is entitled to additional damages to give him the benefit of the fraudulently promised contract.

63. Though David was not employed by WMF when Ackerman began her and WMF's fraudulent scheme to induce Jeffs to work for WMF, David joined and completed the fraudulent scheme when he fired Jeffs in 2016 with knowledge of the written misrepresentation of employment for a term and is liable with Ackerman and WMF.

64. Ackerman's, WMF's and David's fraud was intentional, malicious and outrageous, entitling Jeffs to punitive damages.

WHEREFORE, Jeffs demands judgment against WMF, David and Ackerman in the amount of $186,250, plus prejudgment interest, plus consequential damages, plus punitive damages and costs and such other and further relief that the Court deems proper and just.

**The Ryan Law Group, LLP.**

By: _____
ANDREW J. RYAN, Esq.

Andrew J. Ryan, Esq.
I.D. No. AR6678
The Ryan Law Group LLP
14 East 4th Street, Suite 406
New York, NY 10012
(212) 944-7300
ar@trlg-llp.com

James P. Golden
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA 19103-1443
(215) 255-8590
goldenjp@hamburg-golden.com
Pro Hac Vice to be moved

**Attorneys for Plaintiff
Benjamin M. Jeffs**

Date: 04/19/18

**EXHIBITS**

1. March 1, 2015, Employment Contract.
2. March 2-3, 2015, emails between Ackerman and Jeffs.
3. June 7, 2016, letter from David to Jeffs.